STATE of Alaska, Appellant,

v.

James COATS, Appellee.

No. 7102.

Court of Appeals of Alaska.

Oct. 7, 1983.

Mary Anne Henry, Dist. Atty., Ketchikan, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellant.

Mary E. Guss, Law Offices of Clifford H. Smith, Ketchikan, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

James Coats pled guilty to and was convicted of the crime of sexual abuse of a minor, in violation of AS 11.41.440. The offense is a class C felony, punishable by a maximum term of five years' imprisonment. AS 11.41.440(b); AS 12.55.125(e). On August 2, 1982, Superior Court Judge Thomas E. Schulz sentenced Coats to serve two years in jail, with all but two months of the sentence suspended on the condition that Coats satisfactorily complete a three-year period of probation. As part of his probation, Coats was required to participate in any psychological or alcohol counseling recommended by the psychologist who had examined him prior to sentencing.

The State of Alaska has appealed this sentence, contending that it is too lenient. The state contends that a sixty-day

period of time to serve is inadequate and that a greater period of incarceration was required to impress upon Coats the seriousness of his offense and to reflect societal condemnation of his crime. We agree that Coats's sentence was too lenient and express our disapproval.[1]

### THE OFFENSE

At the time of the offense, Coats lived in Craig, Alaska, with his wife and family. Coats's twelve-year-old stepdaughter, A.P., the natural daughter of Coats's wife, was the eldest child in the family. On November 6, 1981, Coats's wife was in Anchorage on business; A.P. was left in charge of caring for her younger brothers and sisters. In the early morning hours of November 6, Coats arrived home intoxicated. He woke A.P. and told her to attend to her baby sister, who was crying. Coats then told A.P. to sleep with him in his bed; he explained that he wanted to have her nearby in case the baby needed further attention.

A.P. initially resisted the request to sleep in Coats's bed but complied when Coats threatened her. When A.P. and Coats were in the bed together, Coats put one arm around A.P.'s neck and fondled her breasts with his other hand. A.P. started crying. She pleaded with Coats to let her go and attempted to leave the bed. Each time A.P. attempted to leave, Coats pulled her back on the bed. Eventually, Coats let A.P. return to her own bed. Soon, however, Coats ordered A.P. back to his bed, where he started once again to fondle A.P.'s breasts; Coats then reached down and began fondling the area of A.P.'s crotch. A.P. repeatedly attempted to leave, but each time she resisted, Coats physically restrained her. A.P. became very frightened and distraught. A.P.'s crying finally woke the baby, and Coats released her to care for the child. At this point A.P. managed to flee from the house. She sought help from a neighbor who alerted the Craig police. Following investigation of the incident, Coats was indicted for the sexual abuse of A.P.

### THE OFFENDER

The presentence report indicates that Coats was forty-one years old when he attacked his step-daughter. He was self-employed as a carpenter. As a result of being charged with the sexual abuse of A.P., Coats separated from his wife and moved to Anchorage, where he worked as an independent contractor. At the time of sentencing, Coats planned to obtain a divorce and remain in the Anchorage area.

Prior to his conviction of the present offense, Coats had only one misdemeanor conviction. In April, 1980, Coats was convicted in Craig of misconduct involving weapons. According to the presentence report, Coats had a long-standing and serious problem with alcohol abuse. Both the present case and Coats's prior conviction for misconduct involving weapons were alcohol related.

A psychological evaluation prepared prior to sentencing confirms that Coats had a drinking problem and that this problem contributed to his sexual abuse of A.P. The psychological evaluation also indicates that Coats suffered from a personality disorder involving poor impulse control, a lack of appreciation for social mores, poor masculine identification and a faulty conscience.

Prior to sentencing, Coats expressed varying and inconsistent reactions concerning his conviction of sexual abuse. In an initial interview with the examining psychologist, Coats expressed remorse and contrition to a degree that appeared exaggerated. Later, however, Coats stated that he pled guilty to sexual abuse only after A.P.'s mother threatened to instruct A.P. to change her testimony to implicate Coats in a more serious charge of sexual assault if he did not change his plea. Coats said he believed he was being victimized and treated in a harsh manner, and that the type of conduct he was accused of was "extremely prevalent." When Coats spoke with the

---

1. When the state appeals, contending that a defendant's sentence was too lenient, this court cannot modify the sentence actually imposed; we are authorized only to express approval or disapproval of the sentence appealed by the state. AS 12.55.120(b).

probation department to provide information for his presentence report, he denied attempting any sexual activity with A.P., even though he admitted he was probably very intoxicated. Coats described his conduct as having been playful and innocent of any sexual intent.

During the period between arrest and sentencing, Coats apparently continued to drink heavily. Although acknowledging continuous alcohol consumption in the past and admitting that, on occasion, he drank "too much," Coats denied that he ever had a drinking problem. Prior to sentencing, Coats made no effort to obtain alcohol rehabilitation treatment. Nor did Coats express any interest in seeking psychological counseling or therapy.

## THE SENTENCING HEARING

The presentence report in this case emphasized the seriousness of Coats's conduct, observing that he probably would have had sexual intercourse with A.P. if her crying had not awakened her baby sister. The report further noted Coats's poor impulse control and his tendency toward aggressive behavior while intoxicated. Given Coats's persistent denial of guilt and his lack of insight to his psychological and alcohol abuse problems, the report concluded that Coats, unless deterred, might commit similar crimes in the future. Thus, the presentence report recommended that Coats receive a sentence of two years in a facility where alcoholism counseling and psychotherapy was available. The prosecution concurred in this recommendation.

At the sentencing hearing, Judge Schulz reviewed all applicable criteria, placing the greatest weight on the need to express community condemnation of the conduct involved in the offense. Nevertheless, Judge Schulz noted that the offense was Coats's first felony conviction, that it arose from a single incident and did not involve sexual penetration, and that A.P. apparently suffered no serious physical or emotional harm. In light of these factors, Judge Schulz felt constrained to depart from the recommendation in the presentence report by impos-

ing a sentence of two years and suspending all but two months of the sentence.

Judge Schulz was particularly influenced by this court's decision in *State v. Jane Doe*, 647 P.2d 1107 (Alaska App.1982). Jane Doe was convicted of sexually abusing her children. Both parents were involved in numerous sexual assaults occurring over a prolonged period of time. The children suffered significant, emotional damage, which was potentially lasting in nature. In *Jane Doe*, we held that imposition of a probationary sentence was inappropriate. We concluded that the trial court should have imposed a sentence of at least ninety days to serve and that a three-year sentence would not have been inappropriate. *Id.*, 647 P.2d at 1111.

Because Judge Schulz believed that the conduct involved in *Jane Doe* was significantly more serious than that involved in the present case, he concluded that a sentence of ninety days or more for Coats would be inappropriate and inconsistent with the basic goal of achieving uniformity in sentencing. Thus, Judge Schulz's decision to sentence Coats to a sixty-day period of unsuspended jail time was an apparent effort to avoid a sentence inconsistent with that recommended by this court in *Jane Doe*.

We conclude, however, that Judge Schulz's comparison of the conduct in the present case with that involved in *Jane Doe* was based on a misunderstanding of the scope of our holding in *Jane Doe*.

## DISCUSSION

Judge Schulz was unquestionably correct in reaching the conclusion that Coats's sexual abuse of A.P. was considerably less serious than the sexual abuse that occurred in *Jane Doe*. A comparison of conduct alone does not, however, automatically justify a lesser sentence in this case than the minimum acceptable sentence approved in *Jane Doe*. By relying exclusively on a comparison of the criminal conduct, Judge Schulz mistook the basic premise of our decision in *Jane Doe*, and overlooked a number of cir-

cumstances in the present case that were highly relevant to sentencing.

It is essential to recognize that in *Jane Doe* we accepted as true the factual findings made by the sentencing court. Only in light of these findings did we indicate that a minimum sentence in the range of ninety days would have been permissible. The sentencing court's factual findings in *Jane Doe* were highly favorable to the defendant. The court found that Jane Doe had, almost without exception, played a passive role in incidents where her children were sexually abused. The court also found that when Jane Doe did participate in acts of sexual abuse she was responding to demands placed upon her by her husband, John Doe. John Doe was the primary instigator of the sexual abuse; he consistently took advantage of Jane Doe's submissive personality. Finally, the sentencing court in *Jane Doe* expressly found that incarceration of Jane Doe would be contrary to the best interests of her children, the victims in the case. In making this finding, the court relied upon testimony by a psychologist indicating that lengthy incarceration of Jane Doe would be traumatic for her children and that, to minimize emotional harm to the children, it was essential to reestablish a normal parent-child relationship between Jane Doe and her children. *Jane Doe*, 647 P.2d at 1110 n. 11.

Judge Schulz apparently failed to take account of the highly mitigating factual findings of the sentencing court in *Jane Doe*. He also apparently failed to recognize that this court's decision in *Jane Doe* was based on an acceptance of the trial court's factual conclusions.

Significantly, none of the mitigating circumstances found by the sentencing court in *Jane Doe* appear to be present in this case. Though this offense is limited to a single incident, Coats's participation in the sexual abuse of his stepdaughter was active. He initiated the sexual contact and appears to have been intent upon having sexual intercourse with A.P. A.P. actively resisted Coats's advances, but he physically restrained her to prevent her from leaving his bed. Coats's conduct was not influenced by any other person. It does not appear that Coats was under any emotional stress prior to assaulting A.P. or that there is any other explanation to mitigate the seriousness of the assault. Finally, the welfare of A.P. was not a factor weighing against incarceration of Coats. Coats severed his ties with A.P.'s mother shortly after the assault and moved to Anchorage. At the time of sentencing, he planned to obtain a divorce. Any attempt to reestablish parental ties between Coats and A.P. would have been unrealistic and contrary to A.P.'s best interests.

These circumstances contrast sharply with those in *Jane Doe*. While the extensive sexual abuse in *Jane Doe* was more serious than the single episode here, there were mitigating circumstances which weighed strongly against imposition of any significant period of incarceration. Since there are no similar mitigating circumstances in this case, Judge Schulz's reliance on *Jane Doe* was inappropriate.

Judge Schulz's reliance on *Jane Doe* also had the effect of directing his attention away from several specific factors that increase the severity of Coats's offense. As we have previously mentioned, although no intercourse or sexual penetration occurred, Coats's assault on A.P. was apparently aimed at achieving sexual intercourse. He was prevented from concluding his sexual assault only because A.P.'s baby sister began to cry. When viewed in light of Coats's apparent purpose and the manner in which he was prevented from accomplishing his purpose, the limited extent of sexual contact is not highly significant.

It is also significant that Coats assaulted a member of his own family whose well-being was entrusted to his care. *See Goulden v. State*, 656 P.2d 1218, 1222 (Alaska App. 1983) (upon conviction for sexual abuse of a child, a substantial period of incarceration was warranted because the defendant occupied a position of trust in relationship to the sexually abused child). *See also* AS 12.55.-155(c)(18) (providing for an aggravating factor when a crime is committed against a

spouse or a family member living in the same dwelling as the defendant); AS 12.-55.155(c)(5) (for purposes of presumptive sentencing, an offense may be aggravated if the defendant knew or reasonably should have known that the victim was particularly vulnerable or incapable of resistance).

Perhaps the most important consideration indicating the appropriateness of a substantial jail sentence, however, was Coats's own attitude. Coats denied responsibility for his crime against A.P., and he openly asserted that his behavior was not unusual. There is no indication that Coats made any effort to deal with his alcohol problem, even though his intoxication was apparently a significant factor in triggering the assault on A.P. Similarly, Coats showed no interest in obtaining psychological assistance for his personality disorder, which was also at the root of his assault on A.P.

In summary, there is simply nothing in the record to support a conclusion that Coats was a willing or promising candidate for rehabilitation. The lack of any promise for rehabilitation strongly indicates that a substantial period of incarceration would be appropriate to impress Coats with the seriousness of his crime and with the need to refrain from further similar activity. *See Richards v. State,* 616 P.2d 870, 872 (Alaska 1980) (substantial prison sentence justified in light of defendant's serious crime, potential for anti-social conduct and severe alcohol problem and lack of motivation to obtain treatment); *State v. Ahwinona,* 635 P.2d 488, 491 n. 3 (Alaska App.1981) (where violent crime committed under influence of alcohol, court should have considered defendant's background of alcohol-related violence in imposing sentence since it was rele-vant to the issue of defendant's potential for rehabilitation).

The factors enumerated above indicate that Coats's offense should not have been treated as a minimal one despite the limited nature of the sexual contact. There is little indication in the sentencing record that Judge Schulz considered any of these factors, since he was convinced of the overriding need to use the conduct in *Jane Doe* as a point of reference for sentencing purposes. Judge Schulz's approach failed to recognize the absence of any significant mitigating circumstances and it also failed to consider significant aggravating circumstances.[2] The sentence imposed by Judge Schulz included only a brief term of unsuspended imprisonment and was essentially probationary in nature. As we recently said in *Langton v. State,* 662 P.2d 954, 959 (Alaska App.1983):

> In establishing sentencing guidelines to cover cases not subject to presumptive sentencing, the Sentencing Guidelines Committee established by the supreme court treated sentences of 60 days or less as probationary sentences since it felt that such a sentence was viewed in this way by the criminal justice community. Such a sentence is frequently referred to as "shock probation," since the defendant is placed in prison long enough to get a taste of what it is like but not long enough, it is felt, to suffer the adverse consequences of prison life.

After considering the entire sentencing record, we are convinced that a probationary disposition was too lenient.

Especially where, as here, the specific crime charged constitutes a class C felony, the option of using probationary sentences for first offenders should be given serious

---

**2.** An additional factor aggravating the offense in the present case is Coats's conviction in 1980 for misconduct involving weapons. Although this misdemeanor itself is not a serious one and would normally deserve little emphasis, it appears that the prior crime was directly related to alcohol abuse by Coats. As a result of his conviction, Coats was required to refrain from drinking for a one-year probationary period. In the context of the present offense, which was apparently triggered by Coats's intoxica-tion, the prior offense takes on significance, since it indicates that Coats should have been aware of his tendency toward aggressive and socially unacceptable behavior when intoxicated. The prior conviction also underscores the unreasonableness of Coats's belief that he did not suffer from an alcohol abuse problem; it thus emphasizes that, given Coats's unwillingness to recognize his drinking problem, he was a poor prospect for rehabilitation through a probationary sentence.

consideration by sentencing courts. Nevertheless, this court has consistently expressed the view that sexual abuse of children cannot be condoned. There is a compelling need in such cases to express community condemnation of those who sexually abuse children and to make clear to offenders that conduct is abhorrent to contemporary social norms. *See e.g., Langton v. State,* 662 P.2d 954 (Alaska App.1983); *State v. Jane Doe,* 647 P.2d 1107 (Alaska App.1982); *Goulden v. State,* 656 P.2d 1218 (Alaska App.1983); *Qualle v. State,* 652 P.2d 481 (Alaska App.1982); *Seymore v. State,* 655 P.2d 786 (Alaska App.1982); *Van Hatten v. State,* 666 P.2d 1047 (Alaska App. 1983).

In most sexual abuse cases, the young victims are particularly vulnerable to abuse and are as a practical matter incapable of effectively defending themselves. Innocent children who have been the victims of sexual abuse may suffer serious, long-term emotional and psychological injuries; the nature and scope of the injuries is often difficult to predict with accuracy. In almost all cases, a sexual abuse victim must have tremendous courage and determination simply to cope with the emotional trauma involved as the primary witness in the adversary process of a formal prosecution. And often the disruption of normal family life occasioned by a prosecution will lead a youthful victim to feel confused and guilty.

 All of these considerations demand that due emphasis be placed on expressing community condemnation of offenders who sexually abuse children; sentences must make it clear to the offender and the victim alike that the offender, not the victim, has committed the crime. Although we think that a probationary sentence may properly be used when a first offender is convicted of a class C felony involving sexual abuse of a child, such a sentence will be appropriate only if mitigating circumstances exist and the offender is a promising candidate for rehabilitation through probationary supervision.

## CONCLUSION

 Our review of the sentencing record in this case discloses no significant factors mitigating Coats's offense. There are a number of factors that tend to aggravate the offense. Moreover, the record strongly indicates that Coats is a poor candidate for rehabilitation. Given these circumstances, we conclude that Judge Schulz was clearly mistaken in sentencing Coats to serve only a nominal period of incarceration. We believe that the facts of this case would have supported imposition of a two-year term of imprisonment, as recommended in the presentence report. However, given the limited sexual contact and the victim's apparent lack of lasting emotional harm, we do not think that a two-year unsuspended sentence was required. We conclude that Coats should have been sentenced to a period of at least six months of unsuspended imprisonment with eighteen additional months of suspended jail time. This would have been minimally adequate to impress upon Coats the seriousness of his offense and to express the community's condemnation of his conduct.

We DISAPPROVE the sentence imposed by the superior court.