**STATE of Alaska, Appellant,**

v.

**Ralph CAPJOHN, Appellee.**

No. A–2999.

Court of Appeals of Alaska.

Sept. 29, 1989.

James E. Torgerson, Asst. Dist. Atty., Dwayne W. McConnell, Dist. Atty., Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellant.

Michael G. Karnavas, Asst. Public Defender, Kodiak, and John Salemi, Public Defender, Anchorage, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

SINGLETON, Judge.

Ralph Capjohn pled no contest to one count of a three count indictment charging sexual abuse of a minor in the second degree, a class B felony under AS 11.41.-436(a)(2). The maximum penalty is ten years' imprisonment. Presumptive terms are, respectively, four years for a second felony offender and six years for a third felony offender. AS 12.55.125(d). Capjohn, a first felony offender, is not subject to presumptive sentencing. The trial court imposed a sentence of 180 days with 180 days suspended and placed Capjohn on probation, requiring that he participate in psychological counseling with the Kodiak Island Mental Health Center and be subject to an evaluation using the Plethysmograph to determine any areas of sexual deviancy. The state appeals, contending that the sentence is too lenient. We affirm.[1]

THE OFFENSE

Ralph Capjohn molested his ten-year-old niece, I.C., on a number of occasions ending in September 1988. I.C. stated that she would sit on Capjohn's lap and he would

---

1. When the state appeals a sentence as too lenient, we are authorized only to express approval or disapproval of the sentence and have no authority to modify the sentence. AS 12.55.- 120(b). *See State v. Woods,* 680 P.2d 1195, 1196 n. 1 (Alaska App.1984); *State v. Coats,* 669 P.2d 1329, 1330 n. 1 (Alaska App.1983).

put his arm around her and put his hand between her legs. He would leave it there for a long time and she would ask him to stop, but he would not. She also stated that he had put his hands on her breasts numerous times and asked her if he could take a picture of her in her underwear. She declined.

I.C. complained to a teacher at her school and the police were summoned. Capjohn was interviewed as a result of the investigation. He stated that I.C. was his favorite niece and he liked to treat her as a daughter. He admitted to kissing I.C. in public near the post office. Mr. Capjohn also admitted to touching I.C. between the legs and on her breasts. He also stated that this happened after I.C.'s stepfather was lost at sea in January 1988. He apparently concedes that such conduct continued until September 1988. It appears that the victim was fully clothed at all times and that Capjohn touched her through her clothing. The victim's father, David Capjohn, is the defendant's brother. In a letter to the probation officer, he indicated that there had been no financial, emotional, or medical impact on his daughter or family concerning the matter and that he would like to have the charges dropped. The victim's mother did not respond to inquiries from the probation officer.

## THE OFFENDER

At the time of sentencing, Ralph Capjohn was fifty-one years of age. He had spent almost all of his life in the small community of Old Harbor, a village in Kodiak, Alaska. Capjohn's father died in 1956, and he took care of his mother in Old Harbor until she died of cancer in 1986, at the age of seventy-two. At age six, Capjohn's back was broken. The injury left him with a permanent physical deformity and has caused Capjohn to experience recurrent pain and trauma. In the late 1960's and early 1970's, Capjohn had a minor misdemeanor record for alcohol-related offenses. He apparently was drinking heavily at the time. It appears he has solved his alcohol problem and states that he has not consumed alcohol since May 1980. He has no apparent drug dependency, nor does he have any other criminal record.

Capjohn was examined by Bruce N. Smith, Ph.D, a licensed psychologist. Dr. Smith summarized his conclusions as follows:

[Ralph] Capjohn is a 50–year–old Aleut male referred for a psychological evaluation to aid in determining his current personality profile as this relates to his risk for reoffending, his treatability, and recommendations for placement. Sexual offenses are primarily a function of deviancy of sexual impulse and deviancy of cognitive functioning. Mr. Capjohn's sexual history indicates no other contact with minor females nor interest in males, minor or adult. His pattern has been to go for [a] long period of time, relieving his sexual impulses through masturbation and then having sexual contact with no emotional commitment with a woman every six to seven years. His neighbors in Old Harbor [confirm that he lacks an interest in minor children]. Given the fact that he has obtained appropriate heterosexual relationships, albeit extremely intermitten[t], it is felt that Mr. Capjohn's present sexual offense is [a] function of regression under stress more than fixation to a minor age group. Stresses that brought about the regression include the grieving of his mother's death, the loss of his own sexual erectile functioning, a culmination of a life-long pattern of avoidance of intimacy with women, and extreme loneliness with the death of his mother, and possibly the lack of adolescent experimentation when he was an adolescent given his responsibility to his mother's home and short stature and bowed back.

. . . .

Cognitive deviancy for Mr. Capjohn appears to be more one of a self-involvement and situational corrosion of perspective than of a long-term ingrained pattern of acting out. Mr. Capjohn does not have either the history of legal difficulties going back to the age of 12 nor the degree of anger and acting out tend-

encies in individuals who habitually victimize the people around them. In fact, Mr. Capjohn has shown a very steady work history over the past five years, and prior to that, took care of his mother over a span of 21 years. The areas to be worked with and treatment in Mr. Capjohn's thinking include entitlement, avoiding conflicts and removing them from consciousness, and maintaining a victim[s] stance such that he was not seeking out appropriate adult support and contact. Thus, while Mr. Capjohn has shown clearly that he has the capability for child molestation, it appears that his actions were precipitated by highly situational variables. It appears that he was attempting to express his love, affection, and sexual urges with someone that he felt was safe in the sense that the likelihood of her abandoning him was quite low.

Dr. Smith strongly urged that Capjohn receive psychological treatment.

Capjohn expresses remorse, readily admitted his offense, and seems willing to accept psychological counseling.

## THE SENTENCING

Capjohn was sentenced at the time that he entered his plea withdrawal. At the state's request, the trial court considered our decisions in *Owings v. State*, 771 P.2d 455 (Alaska App.1989); *State v. Coats*, 669 P.2d 1329 (Alaska App.1983); and *State v. Doe*, 647 P.2d 1107 (Alaska App.1982).

Judge Shortell carefully considered the *Chaney* criteria. *See State v. Chaney*, 477 P.2d 441 (Alaska 1970) (rehabilitation, deterrence, isolation, and reaffirmation of community norms). He imposed a sentence of 180 days and suspended the entire sentence. He based his sentence on a number of factors. First, he considered the offense, like all sexual abuse cases, very serious. He noted that there were no threats, no coercion, and no force in the sense of violence used, although Capjohn persisted over his victim's complaints. He found nothing in the record to suggest any significant harm to the victim, either physical or psychological, peculiar to this offense. He found the offense itself mitigated because it was a situational response to a number of stresses in the defendant's life, including his depression, his loneliness, and the recent death of his mother. He noted Capjohn's clean record, his good work in the community, and favorable psychological report. He noted that the probation officer found a better than average chance of rehabilitation in the sense that there was probably little likelihood of a repetition of the offense. Finally, Judge Shortell noted that Capjohn had extremely strong community support; almost his entire community supported the proposition that he should not serve jail time. Apparently recognizing that Capjohn was a lonely, isolated individual who had spent most of his life in the small village of Old Harbor, Judge Shortell was particularly impressed by the fact that, as a condition of bail, Capjohn had to leave Old Harbor. In Judge Shortell's view, this must have been very painful and damaging to Capjohn. Judge Shortell concluded:

It's my feeling on this record that putting him in jail, especially putting him in jail for as long as a year, [as recommended by the probation officer] would probably be detrimental to his prospects for rehabilitation and deprive the community, this community or his own community of Old Harbor if he gets to go back there after a significant period of therapy, of his good services which are demonstrated on the evidentiary record of this case. I don't think under the circumstances if the appropriate probationary sentence is given him, I don't think there is a need to confine him in jail and I think a probationary sentence with appropriate conditions would further all the sentencing goals if it follows the conditions that have been recommended by the presentence officer.

## DISCUSSION

In a recent case, *State v. Jackson*, 776 P.2d 320 (Alaska App.1989), this court had occasion to carefully consider sentences for those convicted of class B felonies and particularly for sexual abuse of minors. We

noted that we had disapproved sentences of no incarceration as too lenient on a number of occasions, and stressed that some jail time in the realm of ninety days to a year and one-half should usually be imposed even in mitigated cases. We noted, however, that the legislature had not completely ruled out probationary sentences for those who sexually abuse minors. In some cases, a probationary sentence would be appropriate:

> A probationary sentence—a term involving less than ninety days of unsuspended incarceration—should be reserved for cases that are significantly mitigated in terms of both the offender and the offense. When an offense involves mitigated conduct but is committed by an offender who does not show unusually good prospects for rehabilitation, the imposition of a nonprobationary sentence will further the sentencing goals of both community condemnation and personal deterrence. When an offender who has good prospects for rehabilitation commits a crime involving conduct typical for the offense, the seriousness of the conduct and the resulting need to express community condemnation will militate in favor of a nonprobationary sentence. Thus, a probationary sentence will be appropriate only when an offender's conduct is significantly less serious than typical conduct for the offense and only when the offender's prospects for rehabilitation are shown to be significantly better than the typical first offender's conduct.

*Id.* at 327.

This is a difficult case. On the one hand, Capjohn's conduct was clearly mitigated. He only touched his niece through her clothing and did not violently assault her. It is disturbing that the offenses occurred on a number of occasions during the period of January 1988 until September 1988. The state points out that while there is no evidence that the victim suffered any physical or psychological injury, psychological injury is almost always present in such cases. Nevertheless, a finding that Capjohn's conduct was mitigated in this case is not clearly erroneous. By the same token,

the psychologist who examined Capjohn and the presentence officer who investigated his case are both in agreement that it is unlikely that similar incidents will occur in the future. The events were situational, and there is an indication that Capjohn's problems should be resolvable through therapy. It appears that appropriate therapy is available in Kodiak. While a sentence along the lines proposed by the probation officer, four years with three years suspended, would not have been clearly mistaken, *see Owings v. State,* 771 P.2d at 459, we are not able to say that the sentence actually imposed was clearly mistaken. *See McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

The sentence of the superior court is AFFIRMED.