**STATE of Alaska, Appellant,**

v.

**Steven T. CLARK, Appellee.**

**No. A–2933.**

Court of Appeals of Alaska.

Nov. 9, 1989.

Mark L. Ells, Dist. Atty., Ketchikan, and Douglas B. Baily, Atty. Gen., Juneau, for appellant.

No appearance for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

COATS, Judge.

Steven T. Clark was convicted, based upon his plea of no contest, of sexual abuse of a minor in the second degree, a class B felony. AS 11.41.436(a)(2). Superior Court Judge Thomas M. Jahnke sentenced Clark, a first felony offender, to three years of imprisonment with two years and six months suspended. He placed Clark on probation for a period of five years following his release from confinement. The

state appeals Clark's sentence, arguing that it is too lenient. We affirm.

 In a sentence appeal brought by the state on the ground that the sentence is too lenient, we are not authorized to increase the sentence but may express our approval or disapproval. AS 12.55.120(b); *State v. Doe*, 647 P.2d 1107, 1108 n. 5 (Alaska App.1982). The standard we apply in reviewing any sentence, including whether the sentence is too lenient, is whether the sentence is clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

 In June of 1988, V.W., a five-year-old boy, told his father that Clark had sexually molested him. When the police investigated the case, Clark admitted to an officer that in the winter of 1987, while he was babysitting V.W., he had performed fellatio on V.W. Clark told the officer that he had been high on marijuana at the time. Clark also admitted that earlier the same evening he had fondled V.W.'s penis before V.W. took a bath. Clark was originally indicted for sexual abuse of a minor in the first degree, an unclassified felony. However, he ultimately entered a plea to sexual abuse of a minor in the second degree.

At the time of his offense, Clark was eighteen years old. He had no prior juvenile or adult record except for several offenses for driving without a license. The probation officer who wrote the presentence report concluded that "Mr. Clark is functioning at a socially, emotionally and sexually retarded level and is in need of considerable amount[s] of psychological/psychiatric evaluations, counseling and treatment." The probation officer concluded that Clark did not appear to be a threat to other people and that Clark had high potential for rehabilitation. The probation officer recommended a sentence of three years with all three years suspended. The probation officer also recommended that Judge Jahnke order Clark to serve time in a halfway house which would emphasize rehabilitation and treatment. The record also reflects that Clark has a drug abuse problem. However, at the time of sentencing, Clark had been attending Alcoholics Anonymous and Narcotics Anonymous meetings regularly for a period of one year.

In sentencing Clark, Judge Jahnke expressed reservations about Clark's potential for rehabilitation. In drawing this conclusion, Judge Jahnke emphasized the psychological report by psychologist Robert Hartman. Dr. Hartman's report indicates that the prognosis for Clark in psychological treatment is guarded. Dr. Hartman also stressed Clark's tendency for substance abuse. However, Dr. Hartman also stated "I strongly recommend this individual not be given a jail or prison sentence and feel that placement in a treatment program is the preferred course of action."

In his sentencing remarks, Judge Jahnke emphasized individual deterrence, general deterrence, and community condemnation. He imposed the six months of imprisonment to further these goals.

In *State v. Jackson*, 776 P.2d 320, 326–27 (Alaska App.1989) (footnotes and citations omitted), we set out the following framework for sentencing first offenders convicted of class B felonies:

1. A typical offender committing a typical or moderately aggravated offense should receive an unsuspended term of a year or more to serve. The upper limit in such cases should be four years, reflecting our decision in *Austin v. State*, 627 P.2d 657, 657–58 (Alaska App.1981). In *Austin*, we indicated that first offenders should normally receive a sentence more lenient than the presumptive term for a second felony offender.

2. For an offense that is exceptionally aggravated—one that involves the existence of significant statutorily specified aggravating factors or other extraordinarily aggravated circumstances—a term of up to six years of unsuspended incarceration, the presumptive term for a third felony offender, would be justified.

3. For a case that is less serious than the norm for the offense, either because it involves mitigated conduct or an offender whose background indicates particularly favorable prospects for rehabilitation, a nonprobationary sentence below

the one-year to four-year range for typical offenses will be appropriate. By "nonprobationary," we mean a sentence involving at least ninety days of unsuspended incarceration—in other words, a term that exceeds the sixty-day limit of a sentence involving "shock probation." In such cases, sentencing courts have broad discretion to require that any period of incarceration be served as a condition of a suspended imposition of sentence.

4. A probationary sentence—a term involving less than ninety days of unsuspended incarceration—should be reserved for cases that are significantly mitigated in terms of both the offender and the offense. When an offense involves mitigated conduct but is committed by an offender who does not show unusually good prospects for rehabilitation, the imposition of a nonprobationary sentence will further the sentencing goals of both community condemnation and personal deterrence. When an offender who has good prospects for rehabilitation commits a crime involving conduct typical for the offense, the seriousness of the conduct and the resulting need to express community condemnation will militate in favor of a nonprobationary sentence. Thus, a probationary sentence will be appropriate only when an offender's conduct is significantly less serious than typical conduct for the offense and only when the offender's prospects for rehabilitation are shown to be significantly better than the typical first offender's conduct.

Although Judge Jahnke indicated he was not placing primary emphasis on rehabilitation, an objective view of the sentence suggests that he gave a great deal of consideration to this factor. We believe this was appropriate. Clark was an eighteen-year-old first offender without any serious prior criminal record. It was proper for Judge Jahnke to give these factors great weight. We have formerly held that in sentencing an offender, the court should give primary weight to the offender's prior criminal convictions and must not place inordinate emphasis on predictions of possible future

misconduct. *Maal v. State,* 670 P.2d 708, 711–12 (Alaska App.1983); *Skrepich v. State,* 740 P.2d 950, 954–55 (Alaska App. 1987). Even Dr. Hartman's report, which was guarded about Clark's prospects for rehabilitation, recommended that Clark be placed in a treatment program.

In evaluating Clark's sentence, it is important to consider it in its entirety. Judge Jahnke did not merely impose a sentence of three years with two and one-half years suspended. He also placed Clark on probation for five years with extremely onerous conditions designed to ensure Clark's rehabilitation and to protect the public. Judge Jahnke ordered that following Clark's release from prison, Clark was to enter and successfully complete the thirty-day Alcohol Treatment Service program in Sitka. Apparently this is an in-patient program. Following his completion of the Alcoholic Treatment Services program, Judge Jahnke ordered that Clark go to the Aurora's Watch program for a minimum of 90 days. This is apparently a halfway house which is designed to follow up the treatment at the Alcohol Treatment Services program. Besides the usual probation conditions, Clark is to complete all counseling and treatment programs. In addition, he is not to consume alcoholic beverages, have them in his possession or to enter places where alcoholic beverages are served or sold.

When Clark's sentence is considered in total, it approximates the low end of the scale for a typical or moderately aggravated offense which, according to the *Jackson* framework, should receive an unsuspended term of a year or more to serve. As a practical matter, Judge Jahnke could properly have classified Clark within the third category of offenders which we set forth in *Jackson, i.e.,* a case which is less serious because the offender's background indicates particularly favorable prospects for rehabilitation. Although there are reasons to be guarded about Clark's prospects for rehabilitation, most of those reasons involve psychological predictions about which the court has a right to be wary. The objective facts are that Clark is an eighteen-year-old first offender. The court

was certainly entitled to give Clark the benefit of the doubt and to emphasize Clark's first offender status in imposing sentence. The sentence which the court imposed is carefully designed to address Clark's rehabilitative needs while the conditions of probation and the length of probation ensure the protection of the public. We conclude that the sentence which Judge Jahnke imposed was not clearly mistaken.

The sentence is AFFIRMED.

SINGLETON, Judge, concurring.

While I cannot dispute Chief Judge Bryner's reading of the record, I concur in the decision to affirm. Given Clark's youth and the fact that this is his first felony offense, a sentence of three years with all but six months suspended is not clearly mistaken.

BRYNER, Chief Judge, dissenting.

In my view, the superior court was clearly mistaken in sentencing Clark to a term of three years with all but six months suspended. In *State v. Jackson,* 776 P.2d 320, 326–27 (Alaska App.1989), this court concluded that, in typical cases, first offenders convicted of class B felonies should receive unsuspended sentences in the range of one year to four years' imprisonment. Under *Jackson,* a sentence of less than one year to serve is appropriate only in "a case that is less serious than the norm for the offense, either because it involves mitigated conduct or an offender whose background indicates particularly favorable prospects for rehabilitation...." *Id.*

When judged by these standards, Clark's case plainly falls short of warranting an unsuspended term of only six months to serve.

Clark's conduct was hardly mitigated; to the contrary, for a class B felony it was unusually aggravated. Although Clark was convicted of only one count of second-degree sexual abuse of a minor, he actually engaged in two separate sexual assaults. Clark's victim was a five-year-old boy who had been entrusted to his care. It is particularly significant that the abuse included an act of fellatio, which qualifies as an unclassified felony, carrying a first offense presumptive term of eight years. Given these considerations, it should be apparent that, when viewed as a class B felony, Clark's conduct is among the most serious in its class.

It seems equally clear that, compared to other first felony offenders, Clark's prospects for rehabilitation are not particularly favorable; in fact, they are rather dim. Despite Clark's relative youthfulness, he shows little insight into the nature of his problems and little promise for change. He has a significant substance abuse problem, is a school dropout, and has a spotty employment record. As described in the presentence report, Clark "appears to be an immature and irresponsible person, with a sporadic work history, no marketable job skills, and who has been rather unsuccessful in his social/academic endeavors."

Even though Clark has no prior juvenile or adult criminal record, he has accumulated a significant record of traffic offenses, for which he has previously spent time in jail. According to the presentence report, on at least one prior occasion, Clark has "come very close to sexually abusing another young child...."

It appears that Clark minimizes the seriousness of his criminal misconduct in the present case. Clark told the psychologist who evaluated him for sentencing purposes that "he sees himself as being unjustly blamed for the present charges and that [the charges] have been blown out of proportion."

The psychological evaluation confirms that Clark's problems go considerably beyond immaturity and occasional substance abuse. The report diagnoses Clark as suffering from an antisocial personality disorder and a possible schizophrenic disorder. It describes him as follows:

> He appears to be alienated and angry and tends to act out impulsively and [be] unpredictable in potentially antisocial ways. He may engage in dangerous or extremely pleasure-oriented behavior for the purpose of thrill seeking. It is likely that he has many sexual problems and

that he is very immature. Though he has good interpersonal communication skills, it is likely that the client has a record of poor achievement, poor work history, and problems with authority figures.

He views the world as threatening and sees himself as being unjustly set up for others['] difficulties. The content of his responses indicate[s] that he is experiencing bizzare sensations and/or hallucinations.

This individual appears to have few social skills and though insecure in relationships, may manipulate others through aggressive and intimidating ways. He's overly sensitive and frequently misunderstands others['] motives. His lack of trust may prevent him from developing more close relationships. This client has a pattern of chronic maladjustment that is stable over time and the client is likely to have periods of chaotic situational problems.

The psychological evaluation concludes that Clark's prospects for rehabilitation are, at best, limited. Although the evaluation recommends against imprisonment, that recommendation appears to stem from the conclusion that Clark is in need of long-term placement in a structured (*i.e.*, custodial) environment that provides treatment:

I strongly urge this individual be treated in a controlled setting that uses behavioral management therapy rather than verbal psychotherapy. The prognosis is guarded as the client has a tendency to act out against authority and because he will have difficulty making a trusting relationship with the therapist. The client is also at risk to abuse his medications because of his proneness to addiction. I strongly recommend this individual not be given a jail or prison sentence and feel that placement in a treatment program is the preferred course of action.

In this regard, the majority opinion's reliance on the psychological evaluation's recommendation against imprisonment is highly misleading. The obvious concern of the evaluation is that Clark not simply be warehoused, because he is in need of long-term placement in a "controlled" setting that provides treatment for his serious psychological problems rather than mere punishment. Nothing in the report indicates a preference for release in the absence of appropriate treatment. What the majority opinion ignores is that the treatment ordered by the sentencing court as a condition of Clark's release hardly seems to fit the treatment recommended in the psychological evaluation. Clark was ordered, as a condition of probation, to complete a program that involves only 30 days of residential treatment and that appears to be geared only toward addressing his substance abuse problems. In context, nothing in the psychological evaluation's recommendation against incarceration can be viewed as supporting the lenient sentence the court actually imposed.

I do not suggest that the psychological report be relied on to establish that Clark is a dangerous offender, for I fully recognize the danger of placing inordinate emphasis on the predictive aspects of such reports.

What I do emphasize, however, is that there is nothing in the psychological evaluation and nothing in Clark's background that could conceivably justify a finding that Clark's prospects for rehabilitation are particularly favorable—that is, that he shows promise warranting more favorable treatment than a typical first felony offender.

The majority opinion glosses over the lack of favorable evidence, suggesting that Clark's age alone qualifies him as a particularly good prospect for rehabilitation. Yet nothing in the psychological evaluation or in the presentence report suggests that Clark's age is of particular significance. And I am certainly unaware of anything that would support a generalized conclusion that youthfulness alone should establish an offender's exceptionally good prospects for rehabilitation. Indeed, the sentencing court specifically found that Clark's prospects for rehabilitation were not particularly good. The majority opinion all but overlooks the sentencing court's express finding.

In summary, under the standards set out in *Jackson*, this case is not even close. From the undisputed facts it is clear that Clark was convicted for a crime that was more serious than a typical class B felony. Clark's prospects for rehabilitation are no more favorable, and quite possibly considerably less favorable, than those of a typical first felony offender. Under *Jackson*, Clark deserved to receive, at best, a sentence around the mid to upper end of the one to four year range for typical first offenders convicted of typical class B felonies.

The majority makes a strained and unpersuasive effort to characterize the six-month unsuspended term that Clark received as a sentence approaching the appropriate one to four year range. The majority apparently assumes that the one month of residential substance abuse treatment and three months of aftercare that the sentencing court imposed as conditions of probation are the functional equivalent of incarceration. There is nothing in the record to support this conclusion. Even if there were, the total period of confinement would amount to only ten months, not one year. When the background of the offender and the circumstances surrounding the offense establish that a sentence in the mid to upper end of the applicable one to four year range was called for, it is hard to understand how the majority can realistically view a ten-month term as approaching an appropriate sentence.

In reaching the conclusion that an unsuspended term of six months is too lenient for a serious act of child molestation, I fully recognize that it would be both unreasonable and unfair to hold the sentencing court to standards that did not exist when it handed down its sentence. I am not unmindful that, when Clark was sentenced, *State v. Jackson* had not yet been decided. Yet, this court's decision in *Jackson* drew upon a survey of prior sentencing decisions. Far from adopting a new rule of law, *Jackson* purported only to summarize existing law and to synthesize a conclusion therefrom. Although the lines defining an appropriate sentence for a first offender convicted of a class B felony may not have been as precisely drawn then as they are now, they should nonetheless have been discernible when Clark was sentenced.

In this case, it appears that the sentencing court, in fashioning Clark's sentence, mistakenly placed undue emphasis on *State v. Coats*, 669 P.2d 1329 (Alaska App.1983). There, we disapproved as too lenient a sentence of two years with all but two months suspended. The sentence had been imposed for a first felony offender convicted of sexual abuse of a minor, in violation of former AS 11.41.440. We concluded that Coats deserved a term of at least two years, with no more than eighteen months suspended and no less than six months of unsuspended time to serve.

The sentencing court's reliance on *Coats* was mistaken in two significant respects. First, the court construed our reference to a six-month unsuspended term in *Coats* as being a "recommended" sentence. Our decision, however, only indicated that six months of unsuspended time was the absolute minimum period of incarceration that we would have viewed as not clearly mistaken. A close reading of our decision indicates that, to the extent we viewed any term as "recommended," that term would have fallen closer to two years of unsuspended time.

Second, the sentencing court mistakenly failed to recognize that *Coats* is highly distinguishable from Clark's case. Coats was convicted of sexual abuse under former AS 11.41.440, which punished his offense as a class C felony. Coats' conviction was based on conduct that, at most, approximated attempted sexual penetration. At that time, attempted sexual penetration would have been punishable only as a class B felony.

In contrast, Clark was actually convicted of a class B felony for conduct that included a completed act of sexual penetration— an unclassified felony under current law. Moreover, Clark's victim, a five-year-old child, was considerably younger and more vulnerable than Coats' victim, a twelve-year-old child. Our decision in *Coats* that a six-month sentence was only minimally suf-

ficient for a class C felony seems to me to be less than compelling authority for the conclusion that the same sentence is appropriate for a class B felon whose conduct amounted to an unclassified felony.

A far more compelling precedent than *Coats,* and one that the sentencing court in this case apparently did not consider, is *Benboe v. State,* 698 P.2d 1230 (Alaska App.1985). Like Clark, Benboe was convicted of second-degree sexual abuse of a minor. Benboe's actual conduct consisted of a single incident of slight sexual penetration. In contrast to Clark's case, the penetration was digital rather than oral. Benboe's victim was six years old. Benboe was relatively young (twenty-seven years of age); he was intoxicated when he committed the offense, which was apparently impulsive in nature. Unlike Clark, the sentencing record in Benboe's case supported the conclusion that Benboe's prospects for rehabilitation were relatively good.

The sentencing court in *Benboe* imposed a term of eight years with only one year suspended. This court reversed that sentence as excessive. Reasoning that Benboe was an offender whose prospects for rehabilitation were good and whose conduct could be viewed either as an aggravated class B felony or a mitigated unclassified felony, we concluded that the sentence should not have exceeded eight years with four years suspended.

By comparison to Benboe, Clark is an offender whose conduct was marginally more serious and whose prospects for rehabilitation are perhaps somewhat worse. These differences seem relatively minor, however. By and large, Benboe and Clark appear to be similarly situated offenders who were convicted of the same crime on the basis of similar conduct. They deserve comparable sentences. *Benboe* provides strong support for the conclusion that a sentence in the mid to upper end of the one to four year range should have been imposed in Clark's case.

Given the flexibility inherent in the standard of review in sentence appeals and the need to allow for a broad range of discretion on the part of individual sentencing judges, even if Clark had received a sentence at the lower end of the applicable one to four year range, it would be difficult to say that the sentence was too lenient. However, a sentence of only six months in jail cannot, in my opinion, be justified. The strong policies favoring uniformity in sentencing and discouraging irrational disparity compel the conclusion that an unsuspended sentence of only six months to serve was clearly mistaken and too lenient.

For this reason, I dissent.