STATE of Alaska, Appellant,

v.

West BRINKLEY, Appellee.

No. A–164.

Court of Appeals of Alaska.

April 27, 1984.

Elizabeth H. Sheley, Asst. Dist. Atty., Victor C. Krumm, Dist. Atty., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellant.

John M. Murtagh, Anchorage, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

West Brinkley pled no contest and was convicted of one count of first-degree sexual assault, former AS 11.41.410(a)(4), and one count of contributing to the delinquency of a minor, AS 11.51.130(a)(4). At the time of Brinkley's offense, first-degree sexual assault was a class A felony. Former AS 11.41.410(b). The maximum penalty was twenty years' imprisonment. The presumptive terms were six years for first offenders who used a firearm or caused serious physical injury, ten years for second felony offenders, and fifteen years for third felony offenders. Former AS 12.55.-125(c). Contributing to the delinquency of a minor was a class A misdemeanor with a maximum prison term of one year. Former AS 12.55.135(a).

Judge Ripley initially sentenced Brinkley to a term of six years with four years suspended for first-degree sexual assault without specifically mentioning the charge of contributing to the delinquency of a minor. Judge Ripley imposed sentence prior to hearing allocution from Brinkley. At defense counsel's request the sentence was vacated and the matter was continued to a later time. In the interim the defendant challenged Judge Ripley for cause on the ground that the court, having imposed a sentence, could not thereafter allow meaningful allocution. The challenge was sustained and the case was reassigned to Judge Moody.

Judge Moody held a new hearing and sentenced Brinkley to a term of five years and forty-five days for the first-degree sexual assault, suspending all but the forty-five days. Judge Moody also imposed a concurrent one year suspended sentence for contributing to the delinquency of a minor. As a condition of probation Judge Moody ordered Brinkley to serve three-day weekends in prison every other weekend for two years. Counting the forty-five days, Brinkley's sentence of incarceration was therefore 199 days dispersed over a two-year period. The state appeals, contending that both the sentence imposed by Judge Ripley and the sentence imposed by Judge Moody are too lenient. Since Judge Ripley's sentence was vacated we decline to review it. However, we agree that Judge Moody's sentence was too lenient and express our disapproval.[1]

## THE DEFENSE

Brinkley's victim was his step-daughter, B.B. He married her mother when B.B. was four years old and he continued to live with B.B. and her mother until it was discovered that he was the cause of B.B.'s pregnancy. There is a substantial disagreement between Brinkley and B.B. regarding the circumstances of the offense. B.B. testified that Brinkley began molesting her when she was eight years of age and continued for six years. She stated that most of the sexual abuse consisted of sexual fondling. According to B.B., some-

---

1. When the state appeals, contending that a defendant's sentence is too lenient, this court cannot modify the sentence actually imposed; we are authorized only to express approval or disapproval of the sentence appealed by the state. AS 12.55.120(b). The purpose of our review is to provide guidance to trial courts in imposing sentences in similar cases in the future. Thus, in a sense this appeal is moot because the legislature has substantially reduced judicial discretion by enacting an eight-year presumptive sentence for first-time felony offenders convicted of first-degree sexual assault. AS 12.55.-125(i)(1). Although subject to aggravation or mitigation, this sentence may not be reduced below four years' incarceration unless the trial court finds exceptional circumstances and refers the matter to a three-judge panel. AS 12.-55.155–.175. The state has argued, however, that it is currently contemplating filing charges against a substantial number of parents for recently disclosed sexual abuse of their children occurring as much as five years ago. *See* AS 12.10.010 (providing a five-year statute of limitations). *Cf.* AS 12.10.020(c) (providing that a prosecution under AS 11.41.410–.460 for an offense committed against a person under the age of sixteen may be commenced within one year after the crime is reported to a peace officer or the person reaches the age of sixteen, whichever occurs first, but not extending the period of limitation to more than five years). Given the number of incest cases presently pending in the trial courts which will require sentencing under former law, we have elected to publish an opinion in this case.

time around August, 1981, when she was thirteen years old, Brinkley began forcing her to have sexual intercourse with him. These incidents occurred on the nights that B.B.'s mother was at work. She stated that intercourse continued on a monthly basis until June of 1982, when the discovery that she was almost five months pregnant prompted her to report the assaults. B.B. decided to have an abortion. B.B. indicated that she would have reported the incidents earlier but she was afraid of Brinkley and scared to tell her mother.

B.B. and her mother have since left the state. Through therapy B.B. has apparently made a good emotional adjustment to the trauma of sexual abuse and will continue to receive therapy. Brinkley and the victim's mother have dissolved their marriage.

Brinkley's explanation of the offense differs substantially. He initially denied B.B.'s claims and maintained his innocence until speaking with a psychologist approximately six months after B.B. reported the assaults. Brinkley stated that sexual intercourse began when he and B.B. became sexually aroused during a playful "touching and tickling situation." He asserted that in the three months that followed, B.B. willfully had sexual intercourse with him on three occasions; he then stopped the sexual encounters. Brinkley has also stated that he takes "full responsibility" for what he characterizes as an "error in judgment." Neither Judge Ripley nor Judge Moody made findings resolving the factual disputes between Brinkley and B.B.

## THE OFFENDER

At the time of sentencing, Brinkley was thirty-three years old. He had been a member of the United States Air Force for fourteen years; his job in the service was fire protection and he held the rank of Technical Sergeant. He had an excellent air force career and was well regarded by his peers. He is a high school graduate and has taken college courses to assist his military performance. He has no prior criminal record. Dr. Jon F. Burke, Ph.D., a

psychologist, treated Brinkley. In the psychological evaluation he provided to the court, Dr. Burke stated:

> The record is also very clear in the indications that Mr. Brinkley does not suffer the presence of a major mental disturbance in the form of psychosis or schizophrenia nor are there severe characterological disturbances indicating any sort of preoccupation with sexual psychopathological orientations. Because of these factors, it would seem that the incest itself arises more in the context of a long history of the denial of interpersonal difficulties.

Dr. Burke was satisfied that Brinkley did not present a risk of future criminal activity as long as he was properly supervised. Bill Quam, a probation officer, prepared a presentence report. He found that there was only a slight chance that Brinkley would commit a crime of this type again. He concluded:

> It is the opinion of this officer that given a continued intensive period of counseling in addition to supervision for a lengthy period of time the defendant will not become a re-offender. It is significant that the victim is no longer in the defendant's home nor in the state.

Quam recommended a short period of incarceration followed by an extended period of supervision. He also recommended counseling throughout probation, and that a trust be set up in B.B.'s name to pay for her continued therapy.

## SENTENCING PROCEEDINGS

In his presentation to Judge Ripley, Brinkley's counsel stressed Brinkley's excellent military record and the absence of any criminal record. From reports on B.B.'s progress in therapy, he inferred that she had completely recovered without suffering any ongoing disability as a result of the sexual abuse. He stressed that Brinkley had accumulated fourteen years towards retirement and could retire with a substantial pension in six years, but that an extensive period of incarceration would forfeit Brinkley's substantial pension rights.

He noted that Brinkley's work as a firefighter would permit him to serve three days' incarceration on alternate weekends without jeopardizing either his status in the military or his retirement benefits. Counsel argued that the most appropriate sentence would take advantage of Brinkley's free time for incarceration while requiring him to establish a substantial trust fund for B.B. to offset any medical or other counseling expenses she might incur as a result of the sexual abuse. He noted that Brinkley could not be expected to pay a substantial sum if he was terminated from the military.

The prosecutor recognized Brinkley's excellent background and record and noted that his sentencing presented substantial problems in reconciling the *Chaney* criteria of rehabilitation, deterrence of the offender and others, affirmation of community norms, and isolation. *See State v. Chaney,* 477 P.2d 441 (Alaska 1970). He stressed the risk that B.B. would suffer chronic mental and emotional illness as a result of this incident, the need to deter other potential incest offenders, and the need for community condemnation of Brinkley's conduct. He conceded that he did not have a recommendation for the court but felt that the court should give consideration in any sentence imposed to community condemnation and deterrence.

Judge Ripley carefully considered the *Chaney* criteria and the force of defense counsel's argument on Brinkley's behalf. He conceded that Brinkley's proposed sentence would probably preclude recidivism and would therefore satisfy the *Chaney* criteria of rehabilitation and deterrence of the offender since Brinkley's military career was "the most convenient or the most secure mechanism ... for keeping his life together." He rejected the defense proposal, however, because he concluded: "[W]hat is essentially a misdemeanor sentence does not adequately express society's condemnation for the act, it does not ade-

quately address the reaffirmation of societal norms." He continued:

In this day of liberty in our country that amounts almost to licentiousness where so many people see nothing wrong with sexual exploitation of minors, at least so long as it's not happening to their kids, it seems to me that any sentence which would tend to make that a nights and weekends in jail proposition adversely responds to society's concerns over this offense. For that reason the principle component of my sentence involves incarceration in order to address the standards that I have just mentioned.

Judge Ripley therefore sentenced Brinkley to six years with four years suspended. As conditions of probation, he ordered that Brinkley continue with therapy and set aside a significant amount of money to ensure that B.B. could receive ongoing therapy, or to provide funds for her education. He set the trust fund at $10,000.

It was at this point that defense counsel pointed out to Judge Ripley that he had not allowed allocution. Judge Ripley promptly vacated the sentence and continued the matter to a later time. In the meantime, Brinkley challenged Judge Ripley for cause. Judge Ripley sustained the challenge and the case was transferred to Judge Moody.

The sentencing before Judge Moody proceeded on the theory that Judge Ripley's vacated sentence established an upper limit of six years with four years suspended.[2] Brinkley's attorney outlined to Judge Moody the proposal previously rejected by Judge Ripley whereby Brinkley could serve up to six days per month for a period of two years without jeopardizing his military career. He stressed the fact that the military would provide supervision of Brinkley superior to what Corrections could provide. Judge Moody specifically asked Mr. Quam, the probation officer, for his reaction to the

2. If Judge Ripley's sentence had been "meaningfully imposed," arguably Judge Moody could not have increased it without violating the state constitutional prohibition against placing a de-

fendant twice in jeopardy. *See Dentler v. State,* 661 P.2d 1098 (Alaska App.1983). We do not decide this issue.

proposal. Mr. Quam replied that he thought Brinkley would conform well to supervision and that he believed Brinkley would not be a problem on probation. The prosecutor argued that Judge Moody should reimpose a sentence of six years with four years suspended. After receiving assurances that Brinkley would, in fact, pay a $10,000 restitution award, Judge Moody imposed the sentence requested by Brinkley. Judge Moody never specifically addressed the *Chaney* criteria.

## DISCUSSION

■ In *Leuch v. State*, 633 P.2d 1006, 1010–11 n. 10 (Alaska 1981), the supreme court approved the ABA Standards which establish a preference for sentences of straight probation without confinement. Where confinement is necessary, partial confinement or a periodic sentence, similar to the one imposed on Brinkley, is preferred to a sentence of total confinement. In *Leuch*, the court recognized, however, that certain "affirmative reasons to the contrary" might nevertheless warrant a sentence of total confinement. The court said:

"Affirmative reasons to the contrary" should be found on the basis of showing that probation, or some other alternative to incarceration, is inadequate to serve one or more of the *Chaney* criteria. The ABA Standards list the following legitimate reasons for the selection of total confinement:

(i) Confinement is necessary in order to protect the public from further criminal activity by the defendant; or

(ii) The defendant is in need of correctional treatment which can most effectively be provided if he is placed in total confinement; or

(iii) It would unduly depreciate the seriousness of the offense to impose a sentence other than total confinement. ABA Standards Relating to Sentencing Alternatives and Procedures § 2.5(c) (Approved Draft 1968). The Standards go on to specify that "[o]n the other hand, community hostility to the defendant is

not a legitimate basis for imposing a sentence of total confinement." *Id.* We read these considerations as corresponding to the *Chaney* criteria of isolation, rehabilitation, and community condemnation. We also think that a finding that a non-custodial sentence would fail to deter the defendant and/or others to the requisite degree, the other factors in the *Chaney* list, justifies a sentence of incarceration. These "affirmative reasons to the contrary" should have some basis in the record.

*Id.* at 1010–11.

The court stressed that the primary reason for imposing a sentence of total confinement would be proof that the defendant had been on probation for prior crimes and failed to amend his conduct. *Id.* The court concluded:

A lack of information which stems from the absence of any experience as to how the offender will perform on probation renders it especially difficult to make any judgment as to three of the *Chaney* factors: the need to deter the offender, the need to isolate the offender, and the offender's amenability to the rehabilitative process ....

The preference for non-incarcerative sanctions may be overridden, even if information is lacking regarding their past use in terms of the above three factors, by the other *Chaney* considerations, general deterrence and community condemnation, which are not as closely tied to information regarding past performance on probation programs.

*Id.* at 1011.

General deterrence and community condemnation are most important where the defendant committed crimes against another's person. 633 P.2d at 1013. This conclusion is borne out by the supreme court's treatment of sentences for sexual assault. In *Kompkoff v. State*, 626 P.2d 1091, 1091–92 n. 1 (Alaska App.1981), we summarized the supreme court's standards for sentencing sexual assault offenders as follows:

We are unaware of a single case in which the supreme court has approved a

sentence for rape requiring no incarceration. To the contrary, three cases have expressly disapproved sentences requiring two years imprisonment or less as too lenient where the defendants were first offenders without significant backgrounds. *State v. Wassilie*, [578 P.2d 971, 975 (Alaska 1978)] (18 months to serve too lenient); *State v. Lancaster*, 550 P.2d 1257, 1260 (Alaska 1976) (two years to serve too lenient); *State v. Chaney*, 477 P.2d 441, 444–47 (Alaska 1970) (one year to serve too lenient); *cf. Ahvik v. State*, 613 P.2d 1252 (Alaska 1980) (five years with two suspended appropriate sentence for rape where defendant was an 18-year-old first offender). We do not hold or imply that a sentence requiring no time to serve would never be appropriate; nor do we conclude that placement in a residential therapeutic community, as proposed by appellant's counsel, is the equivalent of no time to serve. The cases referred to above do, however, clearly indicate that a sentence of probation would be appropriate only under exceptional circumstances for a crime as grave as that of rape.

The cases we have cited involved forcible rape, but as we pointed out in *Juneby v. State*, the legislature apparently did not intend to treat forcible rape more severely than intercourse with children below the statutory age. 641 P.2d 823, 841 (Alaska App.1982), *modified on other grounds*, 665 P.2d 30 (Alaska App.1983). We have disapproved a number of sentences imposed on parents or step-parents convicted of sexual abuse of minors. *See, e.g., Langton v. State*, 662 P.2d 954 (Alaska App.1983); *State v. Jane Doe*, 647 P.2d 1107 (Alaska App.1982). These cases stand for the proposition that most cases, even mitigated cases of sexual abuse of minors, warrant a sentence of ninety days to three years of continuous imprisonment. *See also State v. Coats*, 669 P.2d 1329 (Alaska App.1983)

(sentence of two years with all but sixty days suspended too lenient where defendant convicted of sexual abuse of a minor, a class C felony). On the other hand, in *Peetook v. State*, 655 P.2d 1308, 1310 (Alaska App.1982), we held that sentences for first-degree sexual assault under former law should not exceed the six-year presumptive sentence for first offenders using a firearm or causing serious physical injury in the absence of aggravating factors or extraordinary circumstances.

These cases, when read together, roughly divide appropriate sentences for first-degree sexual assault under former law into three categories: (1) the most mitigated cases usually justify a sentence of from ninety days to three years; (2) typical conduct should ordinarily result in a sentence of from three years to six years; and (3) aggravated conduct may justify a sentence of from six years to twenty years, the maximum sentence for that offense under prior law.[3] We recognize that these ranges still permit substantial disparity. Certainly, a three-year sentence is substantially greater than a ninety-day sentence and a six-year sentence substantially greater than a three-year sentence. We addressed this continuing potential for disparity in *Langton*, where we said:

> This unsatisfactory result [substantial disparity in sentences for those with similar backgrounds committing similar offenses] is a necessary concomitant of the substantial trial court discretion which still exists for first-felony offenders where the ultimate decision must rest upon an application of the clearly mistaken standard.

662 P.2d at 963 (footnote omitted).

In recognizing that some cases might justify a sentence of ninety days to three years for first-degree sexual assault, we intended to limit that category to the most mitigated offenses. As we pointed out in

---

**3.** A first offender who receives a sentence of six years or greater under former law should have engaged in conduct which approaches use of a dangerous weapon or causes serious physical injury to the victim. *See Peetook*, 655 P.2d at

1310. Where the sentence exceeds ten years, a substantially more aggravated case is required. *See Austin v. State*, 627 P.2d 657 (Alaska App. 1981).

*State v. Coats,* in the absence of mitigating circumstances which weigh strongly against imposition of any significant period of incarceration, the sentence range approved in *Jane Doe* would be inappropriate. 669 P.2d at 1332. We believe our past decisions provide a framework for determining what cases are appropriate for sentencing within the ninety-day to three-year range approved in *Jane Doe.* As we said in *Peetook:*

> We believe it is essential for judges imposing non-presumptive felony sentences to give consideration to the presumptive sentences provided for in the revised criminal code. Sentencing of first felony offenders to whom presumptive sentencing does not directly apply must be accomplished, primarily, by a careful balancing of the sentencing goals set out in *State v. Chaney.* This does not mean, however, that presumptive sentencing provisions can be entirely ignored in the process of sentencing first offenders. It would be anomalous to conclude that, in enacting the elaborate framework of the presumptive sentencing provisions, the legislature intended first felony offenders to receive more severe penalties than would legally be permissible, under the presumptive sentencing law, for second offenders who committed the same criminal acts. Statutorily prescribed presumptive sentences should thus be regarded as benchmarks which, in the absence of significant aggravating circumstances, define the limits of appropriate sentences for first felony offenders who are not subject to presumptive sentencing. Non-presumptive felony sentences must give reasonable recognition to the presumptive sentencing framework, for only in this manner can it be assured that first offenders to whom presumptive sentencing is inapplicable will not arbitrarily be subjected to harsher treatment than similarly situated offenders who have previously been convicted of a felony and who are therefore required to be sentenced presumptively.

655 P.2d at 1310 (citations omitted). *See also Willard v. State,* 662 P.2d 971, 979–80

(Alaska App.1983); *Austin v. State,* 627 P.2d 657 (Alaska App.1981) (first offenders should not receive sentences in excess of those prescribed for second felony offenders in the absence of aggravating factors or extraordinary circumstances).

We are satisfied that similar considerations preclude a sentence in the mitigated range—less than three years of continuous incarceration—for a defendant convicted of first-degree sexual assault in the absence of statutory mitigating factors or extraordinary circumstances. Possible mitigating factors are set out in AS 12.55.155(d). By its very nature, the term "extraordinary circumstances"—the statutory prerequisite for referral to a three-judge panel under AS 12.55.165–.175—permits some flexibility in its application. In *Langton,* we suggested two possible situations that might warrant a lenient sentence for first-degree sexual assault:

> We are not suggesting that there is no conceivable fact situation which would warrant a probationary sentence for one convicted of sexual assault. We recognize that there may be situations where evidence regarding consent by an adult is ambivalent, or where the law precludes a person by virtue of his or her age from consenting to sexual contact or penetration but the parties are so close to the ages specified in the statute exempting their conduct from regulation that the victim's legal inability to consent could be deemed more technical than real. But none of these considerations justifies a suspended sentence for one who engages in sexual penetration with a four-year-old child.

We note that a jail sentence in the cases of Doe and Langton would not break up a family since Doe and Langton were living apart from their families at the time they were sentenced. In this respect the cases are similar to *State v. Jane Doe,* 647 P.2d 1107, 1110 n. 11 (Alaska App.1982). We do not rule out the possibility that in a mitigated case of sexual assault, evidence that imposition of a jail sentence would break up an

otherwise stable family and result in further psychological harm to the victims of the sexual assault, could justify the imposition of a probationary sentence. We recognize the sensitivity of these cases and realize that the trial judge must have broad discretion in this area. However, barring the strongest showing that the imposition of a probationary sentence was necessary, we believe that the seriousness of these offenses mandates a term of imprisonment.

662 P.2d at 960 (footnote omitted).

 In summary, then, in the absence of statutory mitigating factors or extraordinary circumstances, a person convicted of first-degree sexual assault under former law should not receive a sentence of less than three years' incarceration, and in the absence of statutory aggravating factors or extraordinary circumstances, such a defendant should not receive a sentence in excess of six years' incarceration. Where statutory mitigating factors warrant a sentence of ninety days to three years, extraordinary circumstances might justify a sentence of straight probation. In contrast, statutory aggravating factors or extraordinary circumstances may warrant a sentence of six to twenty years. Applying this test to Brinkley, we conclude that the sentence imposed was too lenient. The sentence was not necessary to maintain a stable family unit. The Brinkleys have dissolved their marriage and B.B. and her mother have moved to the state of Alabama. Brinkley's sexual assault of B.B. was not an isolated event; if his testimony is to be believed, sexual assaults occurred on four separate occasions over a three-month period. B.B. reported substantially

more offenses. The assaults consisted of full intercourse and not merely minimal penetration more akin to sexual contact. In reaching our conclusion, we do not mean to minimize Brinkley's exemplary record or fine career with the military. We do not believe, however, that concern about jeopardizing that military career warranted a lenient sentence in this case. *See State v. Chaney*, 477 P.2d at 444 n. 17, 446 n. 22 and n. 24 (Alaska 1970) (trial court may consider collateral consequences flowing from an accused's conviction such as an undesirable discharge from military service, but collateral consequences standing alone do not satisfy the need to affirm community norms and to deter others). While we do not consider restitution totally inappropriate under the circumstances, we do not believe that it can properly substitute for an appropriate sentence of continuous incarceration.[4]

The sentence of the superior court is DISAPPROVED.

---

4. Defense counsel recognized the difficulties presented by the restitution award in this case. The award of $10,000 was for an unliquidated amount fixed in a somewhat arbitrary manner. We do not address the appropriateness of awarding unliquidated damages as restitution. Defense counsel sought to avoid this problem by stipulating that if the restitutionary award were challenged and set aside, a fine could be substituted, thus depriving Brinkley of incentive to challenge it. *See Dorris v. State*, 656 P.2d 578, 584 (Alaska App.1982) (where a restitution award is improper, the court could substitute a

fine in an equal amount without impermissibly increasing defendant's sentence).

We do disagree, however, with the state's characterization of the restitutionary award as a payment for sexual services rendered, in effect characterizing B.B. as a prostitute. We are satisfied that the trial court sincerely feared that B.B. would need future counseling as a result of the sexual abuse and sought to provide her with the financial resources necessary to pay for that counseling. There is substantial evidence in the record justifying the trial court's concern.