Paul POLLY, Appellant,

v.

STATE of Alaska, Appellee.

No. A–213.

Court of Appeals of Alaska.

Oct. 11, 1985.

· Mark E. Ashburn, Baily & Mason, Anchorage, for appellant.

W.H. Hawley, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Paul Polly was convicted after pleading no contest to three counts of sexual assault in the first degree. Former AS 11.41.410. At the time, first-degree sexual assault was a class A felony, punishable by a maximum penalty of twenty years' imprisonment; presumptive terms of ten and fifteen years were prescribed for second and subsequent felony offenders. *See* former AS 12.55.125(c). As a first offender, Polly was not subject to presumptive sentencing. Superior Court Judge Ralph E. Moody sentenced Polly to the maximum twenty-year

term on each count. Judge Moody made the sentences on Counts I and II concurrent to each other. The sentence on Count III was made consecutive to the other two counts but was suspended on condition that Polly complete a five-year period of probation following release. Polly's total sentence was thus forty years' imprisonment with twenty years suspended. Polly appeals this sentence, contending that it is excessive. We reverse.

Polly's convictions stemmed from a lengthy history of sexually assaultive conduct committed by Polly against his two stepdaughters, R.S. and M.S. The conduct included repeated acts of fellatio, mutual masturbation and fondling.[1] When Polly's assaults were reported, R.S. was eighteen years of age and M.S. was sixteen. Count I of the indictment charged Polly with engaging in an act of fellatio with M.S.; Count II alleged that Polly penetrated M.S.'s vagina with his finger; Count III charged Polly with committing an act of fellatio against R.S. Although the three assaults specifically charged in the indictment were alleged to have occurred within a period of approximately two years, Polly had apparently been engaging in sexual contact with his stepdaughters for as long as six years before the assaults were reported.

After being convicted, but before sentencing, Polly fled the state of Alaska with his family, in violation of the conditions of his release on bail. He was apprehended and returned to Alaska within a short period of time.

Prior to sentencing, several written reports were prepared for the superior court, extensively evaluating Polly's background, his family situation and his psychological condition. The psychological reports char-

---

1. Both R.S. and M.S. initially told the police that Polly's assaults also included genital intercourse. Subsequently, both victims recanted these allegations under circumstances that caused concern for the reliability of the recantations. At Polly's sentencing hearing the state offered to present evidence establishing that the recantations were false. However, Judge Moody did not allow the evidence to be present-

ed. In imposing sentence, Judge Moody did not make any specific findings as to whether genital intercourse had occurred, and nothing in the judge's sentencing remarks indicates that he considered the original allegations. It appears from the sentencing record that Judge Moody did not consider the issue particularly important in fashioning Polly's sentence.

acterized Polly as a borderline personality and described him as evasive concerning the extent of his misconduct and extremely defensive about accepting responsibility for his behavior. The evaluations generally agreed that, given these characteristics, Polly would require a lengthy period of time in treatment before meaningful progress toward rehabilitation could be achieved. The reports further agreed that Polly's family system was severely enmeshed and that, consequently, before Polly could safely be returned to his family, it would be necessary to involve his entire family in treatment. The psychological reports depicted Polly's flight from the state as being consistent with his borderline personality and his enmeshed family situation.

In imposing sentence, Judge Moody initially focused on the lengthy period of time over which Polly had assaulted his stepdaughters, finding, on this basis, that Polly was a worst offender. The judge further found that Polly's chances for rehabilitation were remote and that, without rehabilitation, he constituted a danger to society. Thus, despite Polly's status as a first offender, Judge Moody concluded that the need to isolate Polly should be stressed. These considerations led the judge to impose an aggregate term of forty years with twenty years suspended.

■ Having conducted a careful review of the entire sentencing record, we conclude that an unsuspended term of twenty years' imprisonment is clearly mistaken. We have recently had occasion to give detailed consideration to the sentencing of first offenders who have engaged in repeated acts of sexual assault on children. *State v. Andrews,* 707 P.2d 900 (Alaska App., 1985); *Hancock v. State,* 706 P.2d 1164 (Alaska App.1985).[2] While our deci-

sions recognize that first offenders convicted in such cases deserve to receive aggravated sentences, they hold that the appropriate range for an aggravated first offense sentence in such cases is between ten and fifteen years of unsuspended incarceration. Longer terms of imprisonment will be permissible only in truly exceptional cases. *State v. Andrews,* 707 P.2d 900, 913 (Alaska App., 1985).

Although Polly's conduct in the present case undeniably represents an aggravated pattern of sexual assaults, it is not so exceptional as to merit a sentence outside the normal range we have approved as a benchmark for aggravated first offenders.

We are particularly concerned with the sentencing court's treatment of Polly as a worst offender based exclusively on his conduct in this case. While we have previously held, for purposes of applying the rule in *Austin v. State,* 627 P.2d 657 (Alaska 1981), that a non-presumptive first offense sentence may be increased beyond the presumptive term for a second offense where it appears that the defendant has been engaged in a continuing course of criminality, we have not suggested that this would in and of itself be a sufficient basis for treatment of a first offender as a worst offender. Particularly in cases of incest, a history of assaultive conduct is relatively common and will thus be fairly typical in cases involving first felony offenders. *See State v. Andrews,* 707 P.2d at 913.

In the past, we have approved sentences of twenty years or more in cases involving first offenders convicted of multiple acts of child sexual assault only where the defendant's conduct has been particularly violent or where circumstances such as a prior

---

**2.** *See also State v. Brinkley,* 681 P.2d 351 (Alaska App.1984); *State v. Couey,* 680 P.2d 513 (Alaska App.1984); and *State v. Rushing,* 680 P.2d 500 (Alaska App.1984). *Compare Benboe v. State,* 698 P.2d 1230 (Alaska App.1985), and *State v.*

*Coats,* 669 P.2d 1329 (Alaska App.1983), *with Atkinson v. State,* 699 P.2d 881 (Alaska App. 1985), and *Depp v. State,* 686 P.2d 712 (Alaska App.1984).

prosecution for similar acts have demonstrated that the accused is a recalcitrant offender. *See, e.g., Hancock v. State,* 706 P.2d 1164 (Alaska App., 1985); *Qualle v. State,* 652 P.2d 481, 484–86 (Alaska App. 1982); *Seymore v. State,* 655 P.2d 786, 788 (Alaska App.1982).

█ Here, there is no indication that Polly ever resorted to violence or threats of violence toward his victims. No physical injury resulted from his assaults, and the record indicates that the emotional and psychological injuries suffered by M.S. and R.S. were probably somewhat less than is usual in such cases. Under the circumstances, the fact that the assaultive conduct was repeated over an extended period of time, while certainly a significant aggravating factor, does not justify treating Polly as a worst offender and imposing a maximum sentence.

Nor do we believe that the sentencing court was justified in concluding that it is necessary to isolate Polly for a twenty-year period in order to protect the public. In reaching the decision to give almost exclusive emphasis to the goal of isolation, Judge Moody relied primarily on the psychological reports that had been submitted for use in sentencing. However, our reading of the record indicates that the psychological reports do not support a conclusion that the sentencing goal of rehabilitation is unrealistic and that isolation is required.

█ The reports in this case recognize that Polly's prognosis is guarded and that successful treatment will likely take an extended period of time. Yet they agree that treatment for Polly is necessary and that a course of treatment such as the two-year sexual offender program at the Highland Mountain Correctional Center would be appropriate for him. While all of the reports

concur that success in treatment will be unlikely unless Polly can learn to accept responsibility for his conduct, none suggests that, with proper treatment, Polly would be unable to accept such responsibility or that he would be incapable of dealing realistically with his problems thereafter. We find that the sentencing record does not, in its totality, justify the assumption that Polly is destined to fail at rehabilitation—an assumption that appears to have been central in Judge Moody's decision to impose an unsuspended twenty-year term.[3]

The sentence is REVERSED and this case is REMANDED for resentencing. Upon remand, the sentencing court is directed to impose a total sentence that does not exceed fifteen years' imprisonment.

---

**3.** In any event, we note that we have previously emphasized the need to avoid giving undue emphasis in sentencing to the purely predictive aspects of psychological evaluations. *See State* *v. Andrews,* 706 P.2d at 900, 916–917 (Alaska App., September 6, 1985); 670 P.2d 708, 712 (Alaska App.1983).