Charles COVINGTON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–2158.

Court of Appeals of Alaska.

Dec. 31, 1987.

Charles Easaw, Asst. Public Advocate, Fairbanks, and Brant McGee, Public Advocate, Anchorage, for appellant.

Kenneth S. Roosa, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

SINGLETON, Judge.

Charles Covington was convicted of two counts of lewd and lascivious acts towards a child, former AS 11.15.134, and four counts of sexual assault in the first degree,

former AS 11.41.410(a)(4)(B). He received a composite sentence of forty years with ten years suspended. Covington appealed, challenging his conviction and sentence. We initially reversed, *see Covington v. State,* 703 P.2d 436 (Alaska App.1985) (*Covington I*), but on rehearing we affirmed Covington's conviction and remanded his case for resentencing in light of intervening cases. *See State v. Covington,* 711 P.2d 1183 (Alaska App.1985) (*Covington II*). On remand, the trial court imposed the same sentence and Covington appeals. We reverse and remand for resentencing to a term not to exceed fifteen years, including suspended time.

## THE OFFENDER

Charles Ray Covington was born on September 15, 1941, and was forty-two years old at the time of his initial sentencing in October 1983. He has no prior criminal record. Covington has not completed high school or attained a GED degree. He has, however, been steadily employed during the majority of his life as an industrial worker, chiefly in the field of aircraft maintenance. He has apparently been a good worker and has an offer of immediate employment if he is released from prison. Covington does not appear to suffer from any major mental or emotional illnesses and is apparently not a drug user or an alcohol abuser. After his initial sentencing, he was assigned to the federal correctional institute in Texarkana, Texas, where he has served approximately three years. His institutional record has been good, and he seems to get along well with correctional personnel and other inmates. Although he has declined educational opportunities, he apparently has been a good worker in the prison food service operations.

## THE OFFENSE

We described the offense in *Covington I* as follows:

Covington's victim was his natural daughter, D.C.O. She testified at trial that Covington began sexually abusing her when she was nine or ten years old. D.C.O. was eighteen years old at the time of trial. D.C.O. testified that Covington slept with her, touched her breasts, and penetrated her vagina with his finger. After D.C.O.'s mother's death in November 1977 when D.C.O. was thirteen years old, Covington told her that she reminded him of her mother and had D.C.O. sleep with him in his bed.

Shortly before D.C.O.'s sixteenth birthday [in approximately 1980], Covington began having sexual intercourse with her. D.C.O. testified that she had sexual intercourse with Covington "practically every night," until she moved out in March 1983 [when she was eighteen years of age]. Covington allegedly told her that he did not want her to "grow up naive like [her] mother."

703 P.2d at 438.

Covington testified in his own defense at trial. He denied any sexual improprieties with D.C.O. and explained her testimony as lies intended to aid her in obtaining custody of her younger sister and prevent Covington from moving out of state with the younger sister. *Id.* at 438. Covington continues to maintain his innocence and refuses to discuss the charges.

## RESENTENCING

 Superior Court Judge Jay Hodges held a resentencing hearing on July 8, 1987. The only new evidence introduced was an updated presentence report, outlining Covington's progress while incarcerated. The trial court heard argument from the parties and offered Covington an opportunity for allocution, which Covington essentially declined. The trial court reimposed the original sentence. In explaining the sentence, Judge Hodges indicated that he was influenced by a number of factors. One factor was that the victim suffered psychological harm.[1] The trial court was

---

1. Statutory aggravating factors used to enhance a sentence must be proved by clear and convincing evidence and set out by the trial judge with specificity. AS 12.55.155(f). Where the trial judge relies on findings of fact other than aggravating factors to enhance a sentence, those fact findings must be supported by substantial evidence verified in the record. *See, e.g., Nukapi-*

apparently primarily influenced, however, by the duration of the abuse and the fact that it commenced when the victim was nine years old, and only terminated after her eighteenth birthday when she left the home and sought refuge with friends.[2]

## DISCUSSION

Our decision in this case is complicated by the trial judge's incorporating by reference his remarks at the original sentencing, as justification for the sentences imposed at resentencing. This practice has been criticized. *See Amidon v. State,* 604 P.2d 575, 578 n. 7 (Alaska 1979) (suggesting that in such a case it is unclear that the trial judge rendered a thorough and thoughtful sentencing decision). The practice is particularly troubling in this case because the

parties have not included the judge's original sentencing remarks in the record. Nevertheless, we are satisfied that this case can be decided based on the record provided.

In our view, this case is controlled by *Polly v. State,* 706 P.2d 700 (Alaska App.1985). Polly had apparently been engaging in sexual contact with his two stepdaughters for a period of six years prior to being discovered. The conduct included repeated acts of fellatio, mutual masturbation, and fondling. Id. at 701.[3] Polly, like Covington, did not accept responsibility for his acts. Polly fled the state in an attempt to avoid sentencing. The trial court ultimately sentenced Polly to an aggregate term of forty years with twenty years suspended.[4]

*gak v. State,* 562 P.2d 697, 701 (Alaska 1977), *aff'd on rehearing,* 576 P.2d 982 (Alaska 1978). In this case, the trial court could certainly infer that some psychological injury would naturally result from a nine-year period of sexual abuse. There is no specific evidence in the record, however, indicating that D.C.O. has any longstanding emotional or mental problems as a result of her abuse, nor is there evidence particularizing her mental health in any way. The trial court alluded to testimony at trial and at the original sentencing, but the parties have not specified this testimony for inclusion in the record. Thus, we cannot say, based upon this record, that D.C.O. suffered any psychological harm, sufficiently different from that suffered by any victim of longstanding sexual abuse, that would justify deviation from the ten- to fifteen-year benchmark governing sentences for first offenders convicted of aggravated cases of sexual abuse.

2. In his sentencing remarks, Judge Hodges characterized Covington as a "dangerous offender," which he clarified by pointing out that he meant in the sense of one who caused "personal injury to the victim involved." Judge Hodges was no doubt referring to the duration of the abuse and the fact that it only terminated when the victim fled. Nevertheless, the phrase "dangerous offender," like the phrase "habitual criminal," with which it is used interchangeably in this jurisdiction, is a term of art used to refer to men and women with more than one past felony conviction who have served over one year's imprisonment within the preceding five years. *See, e.g., Pruett v. State,* 742 P.2d 257, 264 & n. 8 (Alaska App.1987). Covington, a first offender, clearly does not satisfy this test.

3. It appears that both victims accused Polly of genital intercourse and later recanted. The trial court did not, however, rely on genital inter-

course in imposing sentence. 706 P.2d at 701 n. 1.

4. Polly and Covington were convicted of multiple counts of sexual abuse and received consecutive sentences. Polly was convicted of offenses against two of his stepdaughters. 706 P.2d at 701. Covington's offenses involved a single victim. There is a preference for consecutive sentences under current law, AS 12.55.125(e). The court's power to impose consecutive sentences, however, does not, standing alone, warrant a sentence beyond the ten- to fifteen-year benchmark for aggravated offenses. Most individuals guilty of incest will have committed multiple offenses and will be vulnerable to multiple charges.

Plea bargaining aside, convictions will normally turn on the respective credibility of the victim and the accused. If the jury believes the victim as to one incident, it will normally accept his or her testimony as to other incidents as well. We have cautioned, however, that the prosecutor's decision as to how many charges to bring should not be permitted to dictate the sentence imposed. *See State v. Andrews,* 707 P.2d 900, 908–09 (Alaska App.1985), aff'd, 723 P.2d 85 (Alaska 1986). The trial court must consider the totality of the defendant's conduct in order to determine an appropriate sentence no matter how many charges are filed. All other things being equal, a person who has committed many sexual assaults should receive a more severe sentence than a person who has committed a single assault. *Id.* at 910. This is so whether the separate incidents involve separate convictions or only a defendant's admissions or substantial independent evidence verified at the sentencing hearing. Consequently, a composite sentence, including consecutive increments in cases of aggravated sexual abuse,

We reversed Polly's sentence and remanded his case for resentencing, directing the trial court to impose a total sentence that did not exceed fifteen years' imprisonment. We based our decision on *State v. Andrews*, 707 P.2d 900 (Alaska App.1985) aff'd, 723 P.2d 85 (Alaska 1986), where we held that the appropriate sentencing range for first offenders convicted of aggravated offenses of sexual abuse or sexual assault on minors is between ten and fifteen years of unsuspended incarceration. Longer terms of imprisonment, we cautioned, would be permissible only in truly exceptional cases. *Id.* at 913.

■ In *Polly*, we pointed out that a continuing course of sexual abuse alone would not be a sufficient basis for treatment of a first offender as a worst offender. *Polly*, 706 P.2d at 702. We concluded that a sentence in excess of twenty years would only appear appropriate where the defendant's conduct had been particularly violent or where circumstances, such as a prior prosecution for similar acts, demonstrated that the accused is a recalcitrant offender. *Id.* at 702–03.[5]

■ Sentences of ten to fifteen years are generally reserved for the most serious offenders. *See Pruett v. State*, 742 P.2d 257, 264–68 (Alaska App.1987). D.C.O.'s testimony that Covington sexually abused her for nine years, subjecting her to virtual daily intercourse during the last two years, certainly qualifies Covington as an aggravated offender deserving of an aggravated sentence. There is nothing in this record, however, that would justify a sentence in excess of the ten- to fifteen-year benchmark established in *Andrews*. *Cf. Hancock v. State*, 741 P.2d 1210, 1215 (Alaska App.1987) (prior felony convictions for which Hancock had served in excess of one year's imprisonment and a history of violence justified departure from ten- to fifteen-year sentencing benchmark for child sexual abuser).[6] In fact, Covington's conduct appears to be indistinguishable from the conduct of a number of individuals whose sentences fall within the ten- to fifteen-year benchmark. *See, e.g., Soper v. State*, 731 P.2d 587, 592 (Alaska App.1987) (affirming a sentence of fourteen years with four years suspended where Soper, convicted of one count of sexual assault in the first degree under former AS 11.41.-410(a)(4), sexually abused a number of his daughters and stepdaughters, including numerous acts of genital intercourse without their consent, over a twenty-year period.)

We recognize that we approved a sentence of fifteen years in *Polly*, and fourteen years with four years suspended in *Soper*, despite the fact that each defendant's conduct was virtually indistinguish-

should, except in extraordinary cases, be within the ten- to fifteen-year benchmark. *See id.* at 910 n. 10 (duty to impose eight-year presumptive term does not mandate stacking presumptive terms where defendant is convicted of multiple counts of first-degree sexual assault or abuse).

5. There are no psychological or psychiatric evaluations in this record. In Polly's case, there were adverse psychological reports. In reducing Polly's sentence, we referred to our prior holdings, cautioning trial courts against giving undue emphasis in sentencing to the purely predictive aspects of psychological evaluations. 706 P.2d at 703 n. 3. *A fortiori*, where the defendant has not been examined by a mental health practitioner, a trial judge should not independently diagnose mental illness and predicate future dangerousness on that diagnosis. *See Salud v. State*, 630 P.2d 1008, 1013–14 (Alaska App.1981).

6. We recently approved a sentence in excess of the *Andrews* benchmark for a first offender.

*Goolsby v. State*, 739 P.2d 788 (Alaska App.1987) (approving a composite sentence of thirty-seven years with twelve years suspended). Goolsby was convicted of four separate sexual offenses involving violent assaults on separate victims who were strangers. Our opinion in *Goolsby* should not be read as holding that violent assaults on adult strangers are intrinsically more serious than repeated nonviolent assaults on a dependent victim related to the offender. *See* AS 12.55.155(c)(18) (offense is aggravated where victim of physical or sexual assault is a member of the same living group as the defendant). Rather, it was Goolsby's established pattern of violent assaults on strangers which led us to approve the unusually severe sentence he received. *See also Nix v. State*, 653 P.2d 1093 (Alaska App.1982) (approving a composite sentence of forty years for an offender with a felony record who was convicted of violent sexual assaults on multiple victims who were strangers).

able in terms of the relevant sentencing criteria. Each year in prison is a very long time for the person who must serve it, and Polly and Covington could well argue that, under a system that seeks to insure uniformity and avoid disparity in sentencing, it is not fair that they serve five more years than Soper.

Our sentence review powers, however, are limited. *See McClain v. State*, 519 P.2d 811, 813 (Alaska 1974) (analytically, the clearly mistaken test implies a permissible range of reasonable sentences which a reviewing court, after an independent review of the record, will not modify).

Our review of the reported cases, particularly decisions of our Alaska Supreme Court, has led us to conclude that the permissible range of reasonable sentences for first offenders convicted of aggravated instances of child sexual abuse is ten to fifteen years. *Andrews*, 707 P.2d at 913. Sentences within that range are not clearly mistaken. This range serves to reconcile legislative concerns about disparate sentencing with the broad sentencing discretion which the legislature has given trial courts. *See Langton v. State*, 662 P.2d 954, 962–63 (Alaska App.1983) (acknowledging that application of the clearly mistaken test to sentence review results in substantial, continuing disparity between those similarly situated). Because Covington's sentence is not within this range, we must conclude that his sentence is clearly mistaken. *See McClain*, 519 P.2d at 813.[7]

The sentence of the superior court is REVERSED. This case is REMANDED for imposition of a total sentence including any suspended time not to exceed fifteen years.

---

7. Our decisions in this case, *Soper*, 731 P.2d 592, and *Mosier v. State*, 747 P.2d 548 (Alaska App. 1987), should not be read as minimizing the conduct of people like Covington, Soper, and Mosier. Clearly, all three committed atrocious offenses against helpless victims, and are worthy of the utmost community condemnation. Mosier, Soper, and Covington deny guilt and express no remorse. Our holdings simply reconcile recognition of the enormity of their offenses with the legislative goal of ensuring reasonable uniformity and avoiding unjustified disparity in sentencing. The more outrageous a given defendant's conduct, the greater the risk that the sentence will not be reasonably related to other sentences imposed for conduct factually indistinguishable. It is when we dispassionately compare the conduct of Covington and Mosier to that of Soper and other defendants, who committed crimes of comparable seriousness, that we conclude that Mosier's and Covington's sentences, to the extent that they exceed the ten- to fifteen-year benchmark, are unreasonably disparate and therefore clearly mistaken. When we examine sentences for first offenders convicted of homicide, serious physical assault, and sexual assault, it becomes clear that a sentence in the ten- to fifteen-year range adequately identifies the recipient as a particularly serious offender worthy of the utmost community condemnation. *See Pears v. State*, 698 P.2d 1198, 1204–05 (Alaska 1985) (sentences for reckless murder); *Pruett*, 742 P.2d at 266–68 n. 10 (sentences for the most serious physical assaults); *State v. Krieger*, 731 P.2d 592, 595–97 (Alaska App.1987) (sentences for homicide in general); *Andrews*, 707 P.2d at 913–14 n. 12 (sentences for sexual assault including incest).